IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARCIA GRANT, et al., | : | |
| Plaintiffs, | : | |
| v. | : | Civil Action No. GLR-20-2226 |
| ATLAS RESTAURANT GROUP, LLC d/b/a OUZO BAY RESTAURANT, | : | |
| | : | |
| Defendant. | | |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant Atlas Restaurant Group, LLC d/b/a Ouzo Bay Restaurant's ("Atlas Group") Motion to Dismiss Plaintiff's Amended Complaint or Alternatively for Stay (ECF No. 26).[1] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Court will grant in part and deny in part the Motion.

## I. BACKGROUND[2]

Atlas Group owns, operates, maintains, and manages several restaurants, including Ouzo Bay Restaurant ("Ouzo Bay") in Baltimore, Maryland. (Am. Compl. ¶¶ 3–7, ECF No. 23). On June 21, 2020, Plaintiffs Marcia Grant ("Grant") and her nine-year-old son ("D.G.") entered Ouzo Bay to eat. (Id. ¶ 12). Plaintiffs had no previous interaction with

---

[1] Atlas Group filed its dipositive motion together with a Motion to File Motion to Dismiss Amended Complaint Under Seal ("Motion to Seal") (ECF No. 27). The Court will rule on the Motion to Seal under separate cover.

[2] Unless otherwise noted, the Court takes the following facts from Plaintiffs' Amended Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

any members of the restaurant's staff. (Id. ¶ 14). After entering the restaurant, Plaintiffs were informed by the hostess and/or manager that they could not dine at Ouzo Bay because D.G.'s clothing violated the dress code. (Id. ¶¶ 15–16). Upon exiting the restaurant per the hostess' request, Grant observed that a white child of approximately the same age as D.G. was dining at the restaurant. (Id. ¶ 19). The white child appeared to have an outfit almost identical to that of D.G. (Id. ¶ 20). Grant asked for clarification of why the white child was permitted to eat when Plaintiffs were not. (Id. ¶¶ 21, 23). The staff at Ouzo Bay did not provide any explanation for the differential treatment. (Id. ¶¶ 21–26). Even after highlighting the similarities in the outfits, Plaintiffs were still denied service at Ouzo Bay. (Id. ¶ 24).

On July 6, 2020, Plaintiffs filed suit in the Circuit Court for Baltimore City, Maryland. (ECF No. 2). Atlas Group removed the action to this Court on July 31, 2020. (ECF No. 1). Atlas Group moved for dismissal of the Complaint on October 19, 2020. (ECF No. 21).[3]

Plaintiffs filed an Amended Complaint on November 2, 2020. (ECF No. 23). The four-count Amended Complaint alleges: violation of 42 U.S.C. § 1981 (Count One); intentional infliction of emotional distress (Count Two); respondeat superior (Count Three); and violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq.

---

[3] This Motion was rendered moot on November 2, 2020 when Plaintiffs filed their Amended Complaint. See Venable v. Pritzker, No. GLR-13-1867, 2014 WL 2452705, at *5 (D.Md. May 30, 2014) ("When a plaintiff files an amended complaint, it generally moots any pending motions to dismiss because the original complaint is superseded."), aff'd, 610 F.App'x 341 (4th Cir. 2015).

2

(Count Four). (Id. ¶¶ 30–63). Grant seeks compensatory damages and punitive damages. (Id. ¶¶ 38, 46, 51, 63).

On November 16, 2020, Atlas Group filed its Motion to Dismiss Plaintiff's Amended Complaint or Alternatively for Stay. (ECF No. 26). Plaintiffs filed an Opposition on December 7, 2020. (ECF No. 33). On December 21, 2020, Atlas Group filed a Reply. (ECF No. 34).

## II. DISCUSSION

### A. Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d

3

445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.     Analysis**

Atlas Group moves for dismissal of Counts One through Four of Plaintiffs' Amended Complaint. The Court addresses each claim in turn.

   **1.     42 U.S.C. § 1981 (Count One)**

42 U.S.C. § 1981(a) provides: "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." To survive a motion to dismiss on a § 1981 claim, "a plaintiff must initially plead [] that, but for race, it would not have suffered the loss of a legally protected right." Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media, 140 S.Ct. 1009, 1019 (2020). "A plaintiff must make more than a general statement that he was treated differently as a result of race." Asi v. Info. Mgmt. Grp., Inc., No. GLR-18-3161, 2019 WL 4392537, at *6 (D.Md. Sept. 13, 2019) (citing Robinson v. Loudon Cnty. Pub. Schs., 2017 WL 3599639, at *4 (E.D.Va. Aug. 18, 2017)).

"Racial animosity can be shown by direct evidence of discrimination, or differential treatment of similarly situated non-minority [individuals]." Id. at *7 (citing McNeil v. Loyola Univ., No. WDQ-13-1473, 2014 WL 320494, at *9 (D.Md. Jan. 27, 2014)). "Plaintiffs must identify [a] proposed comparator and 'establish a plausible basis for believing [the comparator was] actually similarly situated.'" Id. at *6 (quoting Coleman v. Md. Ct. App., 626 F.3d 187, 191 (4th Cir. 2010)).

Atlas Group argues that Plaintiffs have not plausibly alleged that the white child and D.G. were similarly situated because Plaintiffs do not "make any factually affirmative allegations." (Reply Opp'n Mot. Dismiss Am. Compl. ["Reply"] at 3, ECF No. 34). Rather, according to Atlas Group, Plaintiffs "cast[] all of [their] allegations as conjecture and speculation" because the Amended Complaint use phrases like "approximately the same age," "appeared to have on an outfit almost identical," "highlighting the similarities in the outfit," and "indicated a different application." (Id. (emphasis in original)). This argument fails. A motion to dismiss is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts." King, 825 F.3d at 214 (quoting Edwards, 178 F.3d at 243). The factual questions of whether D.G. and the identified comparator were the same age and wore similar clothing will be tested at a later stage in this litigation. Thus, Plaintiffs' use of equivocal language in their Amended Complaint does not foreclose their § 1981 claim.

Atlas Group further argues that Grant's allegations do not support a reasonable inference that Ouzo Bay's denial of service was racially motivated. The Court disagrees. Plaintiffs allege that a "white child of approximately the same age as Plaintiff D.G. [who]

5

appeared to have on an outfit almost identical in style to the outfit worn by Plaintiff D.G." was dining inside Ouzo Bay at the time Plaintiffs were denied service. (Am. Compl. ¶ 20). The white child is an adequate non-minority comparator to D.G. because the two were around the same age and wearing similar clothing, and the only apparent difference between the white child and D.G. was race. Moreover, when Grant asked for an explanation why she and D.G. were denied service but the white child was not, Ouzo Bay staff did not provide any clarification. (Am. Compl. ¶¶ 21–26). In other words, the white child was permitted to dine at Ouzo Bay even though he too appeared to be in violation of the restaurant's dress code, and the staff at Ouzo Bay offered no explanation why this was so. Thus, the Amended Complaint gives rise to a reasonable inference that, but-for Plaintiffs' race, they would not have been denied service. Accordingly, Plaintiffs' § 1981 claim survives Atlas Group's Motion to Dismiss.

### 2. Intentional Infliction of Emotional Distress (Count Two)

To state a claim for intention infliction of emotional distress ("IIED"), a plaintiff must establish the following elements: "(1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe." Figueiredo-Torres v. Nickel, 584 A.2d 69, 74 (Md. 1991) (quoting Harris v. Jones, 380 A.2d 611, 614 (Md. 1977)). "Each of these elements must be pled and proved with specificity." Foor v. Juv. Servs. Admin., 552 A.2d 947, 959 (Md.Ct.Spec.App. 1989). In other words, "[i]t is not enough for a plaintiff merely to allege that they exist; he must set forth facts that, if true, would suffice to demonstrate that they exist." Id. Each element of

IIED "must be satisfied completely before a cause of action will lie; meeting even one element less than fully will not suffice." Hamilton v. Ford Motor Credit Co., 502 A.2d 1057, 1063 (Md.Ct.Spec.App. 1986). "[T]he initial determination of whether these elements have been satisfied rests with the trial judge." Id. "If the judge decides that reasonable men would not differ on any one of these elements, he is within his rights to grant a motion to dismiss for failure to state a cause upon which relief can be granted." Id. Notably, "[i]n Maryland, IIED claims are 'rarely viable' and, thus, subject to a heightened pleading standard." Davenport v. Maryland, 38 F.Supp.3d 679, 692–93 (D.Md. 2014) (quoting Bagwell v. Peninsula Reg'l Med. Ctr., 665 A.2d 297, 319 (Md.Ct.Spec.App. 1995)).

Here, Atlas Group contends that Plaintiffs have failed to adequately plead facts showing that Atlas Group's conduct was intentional or reckless, that Atlas Group's conduct was extreme and outrageous, and that Plaintiffs suffered severe emotional distress. The Court examines these elements in turn.

  a. **Intentional or Reckless Conduct**

To satisfy the "intentional or reckless" element of an IIED claim, "the plaintiff must allege and prove that the defendant either desired to inflict severe emotional distress, knew that such distress was certain or substantially certain to result from his conduct, or acted recklessly in deliberate disregard of a high degree of probability that the emotional distress will follow." Foor, 552 A.2d at 959 (citations omitted). Further, to establish the intentional tort of IIED, "the foreseeable consequence must be far more precise" than the foreseeability

7

required for a negligence claim because "the achievement of that consequence . . . lies at the heart of the tort." Id.

Here, Plaintiffs contend that the staff's racially discriminatory actions were intentional; therefore, the staff knew or should have known the effect their discriminatory conduct would have on Plaintiffs. (See Pl.'s Opp'n Def.'s Mot. Dismiss Pl.'s Am. Compl. or Alternatively for Stay ["Opp'n"] at 10–11, ECF No. 33). However, this general allegation that emotional distress is likely to result from racial discrimination is insufficient to support an IIED claim. Moreover, Plaintiffs fail to set forth any facts that would allow this Court to plausibly infer that the staff at Ouzo Bay desired to cause emotional distress, knew that emotional distress would follow, or acted recklessly with regard to causing such distress. As such, Plaintiffs have not adequately alleged the first element of their IIED claim.

        **b.** **Extreme and Outrageous Conduct**

Liability for IIED is found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Harris, 380 A.2d at 614 (quoting Restatement (Second) of Torts § 46, cmt. d (1965)). The essential element of IIED is "major outrage," which means a plaintiff is expected to withstand occasional inconsiderate or unkind acts. Id. at 614–15. To determine whether a defendant's conduct amounted to "major outrage," courts consider the following factors: "(a) 'the actor's knowledge that the other is peculiarly susceptible to emotional distress,' (b) the setting of the conduct, especially where an actor (such as an employer) is in a 'peculiar

8

position to harass the plaintiff,' and (c) the 'personality of the individual to whom the misconduct is directed.'" Moniodis v. Cook, 494 A.2d 212, 220 (Md.Ct.Spec.App. 1985) (quoting Harris, 380 A.2d at 615–616). These factors, however, are not dispositive. See Ky. Fried Chicken Nat. Mgmt. Co. v. Weathersby, 607 A.2d 8, 14 (1992) ("Although it is a factor in evaluating a defendant's conduct, the mere fact that a defendant knew that a plaintiff was particularly susceptible, however, does not require a finding that the defendant's conduct was outrageous.").

Applying these factors here, Plaintiffs have not adequately alleged that Ouzo Bay's conduct amounted to a "major outrage." First, Ouzo Bay was not "in a unique position to influence [Plaintiffs'] emotional well-being." Figueiredo-Torres, 584 A.2d at 75 (explaining that a psychologist is in a peculiar position to harass a patient because "[a] psychologist-patient relationship, by its nature, focuses on the psyche of the patient; and a psychologist is in a unique position to influence the patient's emotional well-being"). And aside from their argument that D.G. is an "impressionable young child," (Opp'n at 11), Plaintiffs provide no facts suggesting that their personalities made them particularly vulnerable to the effects of racial discrimination. Additionally, it does not appear that Ouzo Bay had any knowledge of Plaintiffs' susceptibility to emotional distress, as Plaintiffs allege they "had no previous interaction with anyone affiliated with the Defendant and [were] not familiar with any member of the Defendant's staff." (Am. Compl. ¶ 14). At bottom, Plaintiffs' bare-bones allegations that Ouzo Bay's conduct "humiliated them" and was "beyond the bounds of decency in society," (Am. Compl. ¶¶ 29, 44), are simply

insufficient to support a claim for IIED. For these reasons, Plaintiffs have failed to plead the second element of their IIED claim.

    c.    **Severe Emotional Distress**

In the context of an IIED claim, "mere allegations of emotional trauma or humiliation are insufficient." Solis v. Prince George's Cnty., 153 F.Supp.2d 793, 804 (D.Md. 2001). Rather, the plaintiff is required to show that she "suffered a severely disabling emotional response to the defendant's conduct." Harris, 380 A.2d at 616. The emotional distress "need not produce total emotional or physical disablement"; however, the "severity must be measured in light of the outrageousness of the conduct and the other elements of the tort." B.N. v. K.K., 538 A.2d 1175, 1181–82 (Md. 1988) (citation omitted); see Moniodis, 494 A.2d at 219 (explaining that a plaintiff claiming to suffer severe emotional distress should indicate she was "emotionally unable, even temporarily, to carry on to some degree with the daily routine of her life"). Further, to plead a claim for IIED, the plaintiff should provide "sufficiently specific details about the nature, intensity, or duration of her emotional distress." Davenport, 38 F.Supp.3d at 693; see also Manikhi v. Mass Trans. Admin., 758 A.2d 95, 115 (Md. 2000) (affirming dismissal of plaintiff's IIED claim where the complaint lacked "evidentiary particulars" supporting her claim, such as "whether the medical treatment that she was forced to seek was of a psychological or physical nature, how long the treatment lasted, whether it was successful or is still continuing, [and] whether it was periodic or intensive").

Here, Plaintiffs state that they "have suffered and will continue to suffer severe and extreme emotional distress" as a result of the incident at Ouzo Bay. (Am. Compl. ¶ 46).

Aside from this conclusory allegation, Plaintiffs fail to provide any allegations about the nature, severity, or duration of their emotional distress, including whether they sought medical treatment after the incident or whether their distress manifested psychologically or physically. Accordingly, Plaintiffs have not satisfied the fourth element of their IIED claim.

In sum, because Plaintiffs' IIED claim is a threadbare recital of the elements and not supported by sufficient factual allegations, the Court will dismiss Count Two of the Amended Complaint.

### 3. Respondeat Superior

Maryland courts have repeatedly held that respondeat superior is a theory of liability, not a standalone cause of action. See Barclay v. Briscoe, 47 A.3d 560, 567 (Md. 2012); Schramm v. Foster, 341 F.Supp.2d 536, 543 (D.Md. 2004); see also Crockett v. SRA Int'l, 943 F.Supp.2d 565, 576 (D.Md. 2013) (explaining how constructive discharge, like respondeat superior, is not a standalone claim but a doctrine that satisfies an element of another substantive claim). Thus, while Plaintiffs may rely on this doctrine to prove Atlas Group's liability, their claim for respondeat superior may not proceed on its own. Accordingly, the Court will dismiss Count III of Plaintiffs' Amended Complaint.

### 4. Title II Claim

Finally, Atlas Group argues that Plaintiffs' Title II claim cannot proceed because Plaintiffs failed to give written notice to the appropriate state or local authority as required by 42 U.S.C. § 2000a-3(c). Plaintiffs expressly concede that they "did not provide written

notice to state or local authorities regarding [their] allegations." (Opp'n at 11). Thus, the Court will dismiss Count Four of Plaintiffs' Amended Complaint.[4]

### III. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Atlas Group's Motion to Dismiss Plaintiff's Amended Complaint or Alternatively for Stay (ECF No. 26). A separate Order follows.

Entered this 7th day of July, 2021.

/s/
George L. Russell, III
United States District Judge

---

[4] In response to Plaintiffs' concession that they did not provide notice as required under the statute, Atlas Group explained that it has no reason to request a stay pursuant to 42 U.S.C § 2000a-3(c) because Plaintiffs have effectively abandoned their claim for injunctive or declaratory relief under § 2000a-3(a). (Reply at 8–9). Accordingly, Atlas Group's request for a stay will be denied.