IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARCIA GRANT, ET. AL         :
                              :
       Plaintiff                    :
                              :
v.                                   :        Civil Action No. 1:20-cv-02226--GLR
                              :
ATLAS RESTAURANT GROUP, LLC    :
                              :
       Defendant             :

**<u>MEMORANDUM OF LAW IN SUPPORT OF ITS</u>**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................1

II.  FACTS ...................................................................................................................1

III.  ARGUMENT ..........................................................................................................4

   A.  Plaintiffs must show that "but-for" their race they would not have suffered the loss of a legally protected right ........................................................ 5

   B.  Plaintiffs cannot establish any racial discrimination, let alone that discrimination was the but-for cause for their denial of service .......................... 6

      i.  Plaintiffs failed to establish that the alleged comparator was similarly situated ................................................................... 6

      ii.  Plaintiffs did not meet Defendant's ordinary requirements for service because D.G.'s clothing violated its dress code .......................... 10

      iii.  Plaintiffs cannot point to any evidence of discrimination, let alone show that racial discrimination was the "but-for" cause of the restaurant not seating their party ............................................... 11

   C.  Plaintiffs cannot rebut their own video evidence ................................. 12

   D.  Plaintiffs have suffered no harm ....................................................... 13

   E.  Plaintiffs are not entitled to punitive damages ................................... 16

IV.  CONCLUSION ......................................................................................................17

Defendant, Atlas Restaurant Group, LLC ("Atlas"), files its Memorandum of Law in Support of its Motion for Summary Judgment, and states as follows:

## I.     INTRODUCTION

Plaintiffs allege in their Amended Complaint that Atlas refused to seat them at one of its restaurants, named Ouzo Bay, because they were African-American. However, the undisputed material facts establish that Plaintiffs were not permitted to dine in the restaurant because Plaintiff, D.G., was wearing clothing that was explicitly prohibited by Ouzo Bay's dress code. Atlas has filed its Motion for Summary Judgment because Plaintiffs have no evidence to support their allegation of racial discrimination other than Plaintiffs' bare accusation. Thus, Plaintiffs cannot meet the "but for" causation standard under 42 U.S.C 1981. Similarly, the alleged "comparator" that Plaintiffs rely on as evidence of discrimination was dressed in clothing that complied with Ouzo Bay's dress code; thus he was not similarly situated to D.G. Lastly, the video recording created by Plaintiff, Marcia Grant, refutes Plaintiffs' allegations of racial discrimination.

## II.     FACTS

On June 21, 2020, Plaintiff, Marcia Grant, her minor son D.G., and a friend named Marcia Hines, wanted to eat at the Ouzo Bay restaurant, operated by Atlas, to celebrate Ms. Hines' 50th birthday. (Grant Dep. 137-138, Jan. 26, 2022, attached as Exhibit 1; Hines Dep. 9,15, Mar. 20, 2022, attached as Exhibit 2; D.G. Dep. 33, Mar. 15, 2022, attached as Exhibit 3). Ouzo Bay is a fine dining restaurant that maintained a dress code, which was posted on a sign at the front of the restaurant on the day of Plaintiffs' visit. (Def.'s Resp. to Pl.'s Interrog No. 12 attached as Exhibit 4; signage order form attached as Exhibit 5 reflecting the dress code language appearing on the sign on the date of Plaintiffs' visit). The posted dress code stated:

HOUSE RULES

Please see
HOST STAND
For Seating

No active wear, no gym clothing, no sweatpants, no gym shorts

No obscenely ripped clothing

No undergarments may be visible

No jerseys or sleeveless shirts are permitted

No hunting apparel is permitted

No baseball hats or beanies may be worn indoors

*Women may wear decorative hats

This Dress Code will be strictly enforced by Management and We Thank You for
your Understanding

(*Id.*). Ms. Grant saw the sign with the dress code on the date of their visit: [1] (Ex. 1, at 143, 155).

When they came to the restaurant, D.G. was wearing mesh basketball shorts and an Air Jordan T-shirt. (Ex. 2, at 21-22; Ex. 3, at 43-44, Ex. 6, at [PIN CITE TO VIDEO] The restaurant staff told Ms. Grant that her son's clothing did not comply with the dress code and, therefore, they could not dine at the restaurant. (Ex. 2, at 24). Restaurant staff asked Ms. Grant if they lived close by so that her son could change his shorts and then return to dine. The staff also suggested that she go to a nearby store and get him some shorts to change into. (Ex. 2, at 32). However, Ms. Grant said that they did not live nearby and refused. (Ex. 6)

Ms. Grant complained that a white family was permitted to dine in the restaurant and that the small child with the white family was dressed similarly to her son. (Ex. 1, at 231). However, the young, white child with this family was wearing J.Crew khaki-style shorts and a designer T-

---

[1]     Moreover, in a video of the occurrence taken by Plaintiff, identified as Exhibit 6 and discussed below, the dress code is visible at :44.

shirt, not mesh basketball shorts and an Air Jordan T-shirt like D.G. (Ex. 2, at 29; Ex. 3, at 50-51;

E.R. Aff. Ex. A, attached as Exhibit 7). Therefore, that child's clothing met the dress code. Ms.

Grant is heard on the video acknowledging that the young child on the patio was wearing shorts

that had "buttons." (Ex. 6, at :42, :47-49). Ms. Hines and D.G. also recognized that the white

child's shorts were a khaki-style short, not athletic wear or gym shorts. (Ex. 2, at 26, 29; Ex. 3, at

50).

    According to Ms. Hines, when Ms. Grant was told they could not dine at Ouzo Bay because

of D.G.'s clothing, she responded by "escalating and getting louder." (Ex. 2, at 31). Ms. Grant

accused the restaurant staff of not permitting her to dine simply because they were African-

American. (Ex. 2, at 33-36). Ms. Grant then began using expletives while standing approximately

2 feet away from the family that was dining on the patio. *Id.*

    None of the employees at Ouzo Bay directed any discriminatory comments toward

Plaintiffs, nor do Plaintiffs claim any other evidence to support their claim of racial discrimination

other than the alleged comparator on the patio. (Ex. 2, at 40, 52-53). According to Ms. Hines, the

assistant manager who also spoke with Ms. Grant was "kind" and "reasonable." (*Id.* at 52-53).

    Donald McCafferty, the restaurant manager who interacted with Plaintiffs initially, did not

seat Ms. Grant and her party because of D.G.'s clothing, not because of race. (McCafferty Aff. ¶

12, attached as Exhibit 8). According to Mr. McCafferty, at the time of Ms. Grant's visit,

approximately 75% of the guests in the restaurant were African-American. (*Id.*).

    Ms. Grant created a video of a portion of her interaction with the restaurant staff in real

time and is Exhibit 6 to this Motion. Exhibit 6.[2] The video shows that the alleged comparator was

not wearing "an outfit almost identical in style to the outfit worn by Plaintiff D.G." Rather, he was

---

[2]    A copy of the video will be delivered to the Court on a disk.

wearing khaki-style shorts and a shirt with a design logo, and as opposed to the mesh basketball shorts and Air Jordan t-shirt worn by D.G.

### III.   ARGUMENT

A motion for summary judgment should be granted when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56; *Cook v. Howard,* 484 Fed. Appx. 805, 820 (4th Cir. 2012). All reasonable inferences are viewed in the light most favorable to the non-moving party; however, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id., citing Ricci v. DeStefano,* 557 U.S. 557, 586; 129 S.Ct. 2657 (2009). If the moving party demonstrates that there is no evidence to support the non-moving party's case, the burden shifts to the non-moving party to show that a genuine dispute exists as to material facts. *White v. ACell, Inc.,* No. CV GLR-20-173, 2021 WL 3911999, at *6 (D. Md. Sept. 1, 2021) However, a "scintilla of evidence" is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986). The non-moving party must show the existence of facts from which a factfinder could reasonably find in its favor. *Id.* Mere allegations are insufficient; instead the non-moving party must "set forth specific evidence" to support a claim. *Cook at 824 (citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561; 112 S.Ct. 2130; 119 L. Ed. 2d 351 (1992)). Further, the evidence proffered by the non-moving party must be admissible. *Founders Ins. Co. v. Richard Ruth's Bar & Grill LLC*, 761 Fed. Appx. 178, 181 (4th Cir. 2019) *(citing Guessous v. Fairview Prop. Invs., LLC,* 828 F.3d 208, 216 (4th Cir. 2016)); *see also Jones v. Reichert Jung, Inc.,* 211 F. Supp. 2d 661, 666 (D.Md. 2002).

Moreover, a dispute of material fact must be "genuine." Fed. R. Civ. Pro. 56(a). This requires that the non-moving party "'must do more than simply show that there is some

metaphysical doubt as to the material facts,'" because "'[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L. Ed. 2d 686 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L. Ed. 2d 538 (1986)).

A.    **Plaintiffs must show that "but-for" their race they would not have suffered the loss of a legally protected right**

The sole remaining count in Plaintiffs' Amended Complaint alleges that Defendant violated 42 U.S.C. § 1981 by not serving them at the Ouzo Bay Restaurant because of their race. In a Section 1981 case relating to the purchase of goods or services, a plaintiff must show the following to establish a prima facie case of discrimination: (1) she is a member of a protected class; (2) she sought to enter into a contractual relationship with the defendant; (3) she met the defendant's ordinary requirements to pay for and receive goods or services ordinarily provided by the defendant to other similarly situated customers; and (4) she was denied the opportunity to contract for goods or services that were otherwise afforded to customers that were not members of a protected class. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir.2004).

The Supreme Court has held that to prevail in a Section 1981 claim, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. National Association of African American-Owned Media*,_____ U.S. _____; 140 S.Ct. 1009, 1019; 206 L. Ed. 2d 356 (2020). In other words, to even assert (let alone prove) a claim for violation of 42 U.S.C. § 1981, "it is not enough to show that 'race played "some role" in the defendant's decision-making process.'" *Comcast*, 140 S.Ct. at 1013. The plaintiff "bears the burden of showing that race was a but-for cause of [his or her] injury. And,

while the materials the plaintiff can rely on to show causation may change as a lawsuit progresses from filing to judgment, the burden itself remains constant." *Comcast* at 1014-15.

A defendant is entitled to summary judgment on a Section 1981 claim when the plaintiff does not make a showing of a genuine dispute of material fact that race was the but-for cause of the plaintiff's injury. *See, e.g., Giles v. Nat'l R.R. Passenger Corp., & Amtrak*, No. 3:19-CV-191-DCK, 2021 WL 3009015, at *6–7 (W.D.N.C. July 15, 2021) (granting summary judgment for the defendant where the plaintiff did not connect his co-workers' racially offensive comments to the defendant's decision to terminate him, and consequently failed to show that race was the but-for cause of his termination). To survive a summary judgment motion, a plaintiff must allege sufficient facts to show that "racial prejudice was a necessary condition of a contractual impairment." *White v. ACell, Inc.*, No. CV GLR-20-173, 2021 WL 3911999, at *7 (D. Md. Sept. 1, 2021) (internal citations omitted). A plaintiff's conclusory statement or "vague opinion" that a defendant acted with racial animus is not sufficient to create a genuine issue of material fact regarding causation. *Pouncey v. Guilford Cty*., No. 1:18CV1022, 2021 WL 2649503, at *9 (M.D.N.C. June 28, 2021). *See also Ofuasia v. Spirit Halloween Superstores, LLC*, No. 3:20-CV-00076-YY, 2021 WL 3783069, at *1 (D. Or. July 21, 2021), *report and recommendation adopted*, No. 1:20-CV-00076-YY, 2021 WL 3779834 (D. Or. Aug. 24, 2021) (granting summary judgment to defendants when the plaintiff failed to create a fact issue that racial discrimination was the but-for cause of his injury by presenting only self-serving statements and speculation).

**B.**   **Plaintiffs cannot establish any racial discrimination, let alone that discrimination was the but-for cause for their denial of service**

**i.**   **Plaintiffs failed to establish that the alleged comparator was similarly situated**

As this Court has acknowledged, a plaintiff may establish intentional discrimination through direct evidence or with indirect evidence that a similarly-situated comparator outside of the protected class was treated differently. (ECF No. 36 at. 4-5). Where "a plaintiff's allegations, [], are based 'completely upon a comparison to [a member of a ] non-protected class . . . the validity of [the plaintiff's] *prima facie* case depends upon whether that comparator is indeed similarly situated." *Thomas v. City of Annapolis*, 851 Fed. Appx. 341, 347 (4th Cir. 2021) (citing *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010)). In *Tinsley v. City of Charlotte*, the plaintiff did not present any direct evidence of sex discrimination, and, instead, identified an alleged comparator that he asserted was similarly-situated. *Tinsley v. City of Charlotte*, 854 F. App'x 495, 505–06 (4th Cir. 2021). The court noted that the plaintiff was not required to point to a similarly-situated comparator to succeed on a discrimination claim, but since he had not provided any other evidence of sex discrimination, his failure to show that the alleged comparator was similarly-situated proved fatal to his claim. *Id.* The court held that without any other evidence of sex discrimination, "without a comparator, there is no evidence providing a causal link between his termination and his sex." *Id*.

A plaintiff relying on comparator evidence to establish discrimination must identify the alleged comparator and "establish a plausible basis for believing [the comparator] was actually similarly situated." *White v. ACell, Inc.*, No. CV GLR-20-173, 2021 WL 3911999, at *10 (D. Md. Sept. 1, 2021) (internal citations omitted)*.* This requires a plaintiff to "provide evidence that the proposed comparators are not just similar in some respects, but 'similarly-situated *in all respects*.'" *Davis v. Town of Tazewell*, 834 Fed. Appx. 7, 8 (4th Cir. 2021) (citing *Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019) cert. denied, 140 S.Ct. 381, 205 L. Ed. 2d 216 (2019)).

Here, Plaintiffs have not presented direct evidence of racial animus but have, instead, sought to establish evidence of racial discrimination solely through a comparator. Ms. Grant confirmed Plaintiffs' theory of comparator liability at her deposition:

> Q:    What are the reasons that you contend that the incident was due to race?
>
> A:    There was a white child that was allowed to eat there with athletic tennis shoes and dressed similar to my son and my son was not.
>
> Q:    Any other reason?
>
> A:    That's the main basis of my argument.
>
> Q:    Is there any -- you say main basis. That means there might be something else.
>
> A:    That's all I can think of right now.

(Ex. 1, at 231-232).

As the Fourth Circuit has explained, normally whether a comparator is similarly situated is a question-of-fact, but:

> . . . this does not preclude a court from deciding as a matter of law that there is an insufficient basis for comparison to submit the question to the fact-finder. The court acts as a gatekeeper, granting judgment as a matter of law unless the plaintiff has adduced relevant and probative evidence sufficient to support a jury verdict in his or her favor. This does not require a factual finding, nor does it abridge the Seventh Amendment jury trial right.

*Tinsley v. City of Charlotte*, 854 Fed. Appx. 495, 501 (4th Cir. 2021) (internal citations omitted).

At the summary judgment stage, a plaintiff's self-serving statement that alleged comparators are similarly situated is insufficient to survive summary judgment without "corroborating objective evidence." *BNT Ad Agency, LLC v. City of Greensboro*, No. 1:14CV767, 2019 WL 4464955, at *10 (M.D.N.C. Sept. 18, 2019), aff'd, 837 F. App'x 962 (4th Cir. 2020).

In *Nelson v. Town of Mt. Pleasant Police Dep't*, the court granted summary judgment to the defendants in an employment discrimination case where the plaintiff, a black woman employed

8

as a police recruit, failed to present evidence of similarly-situated comparators. *Nelson v. Town of Mt. Pleasant Police Dep't*, No. 2:14-CV-4247-DCN-MGB, 2016 WL 11407774, at *1 (D.S.C. June 28, 2016), *report and recommendation adopted*, No. 2:14-CV-4247-DCN, 2016 WL 5110171 (D.S.C. Sept. 21, 2016). The plaintiff was terminated after violating the police department's grooming policy prohibiting officers from having hairstyles with a "bulk or length" that interfered with "the normal wearing of all standard head gear." *Id*. The plaintiff was terminated after she refused to change her hairstyle from a bun on the top of her head so that her headgear would fit. *Id*. The plaintiff attempted to argue that white female employees who were permitted to wear their hair in ponytails were similarly-situated comparators. *Id*. The court found that this was not an adequate comparator because the plaintiff did not allege that she had ever worn her hair in a ponytail like the alleged comparators and was, therefore, not similarly-situated. *Id*.

D.G. and the alleged comparator were not similarly situated, let alone wearing outfits which were "almost identical in style" as alleged in the Amended Complaint. While both were wearing shorts and a t-shirt, the similarities end there. D.G, as depicted in Ms. Grant's video of the interaction, was wearing mesh basketball shorts and an Air Jordan t-shirt. The alleged comparator was wearing khaki-style shorts and a shirt with a design. Thus, D.G.'s clothing did not meet Ouzo Bay's dress code that prohibited "active wear," "gym clothing," or "gym shorts," while the comparator's clothing complied with it. Thus, they were not similarly situated.

In addition to the video evidence showing the differences between D.G. and the alleged comparator's clothing, the deposition testimony established that they were dressed differently and that these differences meaningfully impacted whether each met the restaurant's dress code. As such, as a matter of law, there is insufficient evidence to submit the question of whether Plaintiffs'

alleged comparator is similarly-situated to the fact-finder  *See Tinsley v. City of Charlotte*, 854 F. App'x 495, 501 (4th Cir. 2021).

Here, the alleged comparator was not similarly situated to D.G., let alone in all respects. D.G. was wearing basketball shorts and an athletic t-shirt. The alleged comparator was not. As such, there is no genuine issue of material fact, and Atlas is entitled to judgment as a matter of law.

### ii. Plaintiffs did not meet Defendant's ordinary requirements for service because D.G.'s clothing violated its dress code

As set forth in *Williams*, one of the elements Plaintiffs must satisfy to establish a prima facie case for discrimination under Section 1981 is that they met Atlas' "ordinary requirements to pay for and to receive goods or services ordinarily provided. . . to other similarly situated customers." *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004). In *Goode v. Waffle House*, the plaintiff alleged race discrimination when he went into a restaurant to order take-out food and left after thirty minutes without anyone serving him. *Goode v. Waffle House, Inc.*, No. 5:03-CV-701-BO(3), 2006 WL 8438442, at *2 (E.D.N.C. Aug. 28, 2006). The court found that the plaintiff had not met the "ordinary requirements" prong of the *Williams* test. Specifically, he did not dispute that the restaurant's front entrance had a sign that said "Please Place To-Go Orders at the Register," and that after entering the restaurant, he completely disregarded the posted policy, went directly to the end of the counter opposite the cash register, and remained there the entire thirty minutes he was there. *Id*. at *6. As such, the plaintiff did not meet the ordinary requirements prong because he did not adhere to the defendant's policy for customers ordering takeout. Similarly, in *Martin v. Town of Summerville*, the court found that a tennis instructor seeking to use public tennis courts for private lessons also failed to show that he met the ordinary requirements prong. *Martin v. Town of Summerville*, No. CV 2:19-0774-RMG, 2021 WL 2014995, at *3 (D.S.C. May 20, 2021). The town's policy was that only town-employed professional tennis instructors could provide private

10

tennis lessons on the public courts, and the plaintiff was not employed by the town. *Id*. Moreover, "[p]laintiff testified that he understood the Town's policy to be intended to prevent any and all instructors not employed by the Town from overwhelming the public tennis courts such that the courts could not be reasonably used by citizens of the Town." *Id*. at *4. For that reason, the court determined that the defendant was entitled to summary judgment.

Here, there is no dispute that Atlas' dress code prohibited "athletic wear," "gym clothes," and "gym shorts." Ms. Grant acknowledged seeing the dress code posted as she was leaving the restaurant. (Ex. 1, at 143, 155). Since Plaintiffs did not adhere to Atlas' posted dress code that applied to all patrons, they did not meet the ordinary requirements to receive service. Therefore, Plaintiffs cannot establish an element they must prove to make a prima facie case of discrimination.

### iii. Plaintiffs cannot point to any evidence of discrimination, let alone show that racial discrimination was the "but-for" cause of the restaurant not seating their party

In addition to the lack of comparator evidence, Plaintiffs have failed to present any evidence that racial animus was the but-for cause of Atlas' actions, or even a cause. As such, they cannot meet their burden.

In *Giles v. Nat'l R.R. Passenger Corp., & Amtrak*, the plaintiff alleged that he was terminated "based on his race" but did not present any evidence connecting his termination to his race. *Giles v. Nat'l R.R. Passenger Corp., & Amtrak*, No. 3:19-CV-191-DCK, 2021 WL 3009015, at *6–7 (W.D.N.C. July 15, 2021). Although he alleged that his co-workers made racially offensive comments, he did not connect those comments to the decision to terminate him and, therefore, could not prove that his employer's stated reason for firing him (insubordination) was pretextual. As such, he did not make "a showing of a genuine dispute of material fact that Amtrak's reason for firing him was pretextual or that race was the but-for cause of his termination." *Id*.

11

Plaintiffs cannot establish "but-for" causation. There is no evidence that race was the "but-for" reason that Plaintiffs were not permitted to dine at Ouzo Bay. To the contrary, D.G.'s clothing violated Ouzo Bay's dress code; thus but-for his manner of dress, Plaintiffs would have been seated. As in *Giles*, Plaintiffs cannot show that Defendant's legitimate reason for not seating them was pretext for discrimination. The portion of Plaintiffs' own video supports this conclusion when the assistant manager asks Ms. Grant if she could change her son's clothing or if they lived close enough for him to change. The assistant manager made clear that Plaintiffs were welcomed to dine at Ouzo Bay, provided they complied with the dress code. When Ms. Grant said they cannot change his clothing, the assistant manager invited Plaintiffs to return on another day when they are appropriately dressed. (Ex. 6). Further, while in *Giles*, the plaintiff's claim failed because he could not show a nexus between racially offensive comments and the plaintiff's injury, Plaintiffs here have not provided a single piece of evidence that Defendant made any racially-charged statements, displayed any racially-offensive behavior, or did anything to suggest that race was the "but-for" reason they could not dine at Ouzo Bay. As such, they have failed to "adequately connect" their alleged injury to race discrimination. *See, e.g., Jones v. Lowe's Companies, Inc.*, 845 F. App'x 205, 214–15 (4th Cir. 2021) (noting that it is the plaintiff's burden to show racial discrimination caused the defendant's adverse action). Because Plaintiffs cannot prove "but-for" causation, there is no genuine issue of material fact, and Atlas is entitled to judgment as a matter of law.

### C.   Plaintiffs cannot rebut their own video evidence

Plaintiffs have presented no evidence of racial animus beyond Ms. Grant's conclusory allegations. However, "conclusory statements alone will not defeat a motion for summary judgment." *BNT Ad Agency, LLC v. City of Greensboro*, No. 1:14CV767, 2019 WL 4464955, at *11 (M.D.N.C. Sept. 18, 2019), aff'd, 837 F. App'x 962 (4th Cir. 2020).

Moreover, assuming *arguendo* that, in vacuum, Ms. Grant's testimony was not conclusory, she cannot dispute her own video evidence. *See Scott v. Harris*, 550 U.S. 372; 127 S.Ct. 1769; 167 L.Ed.2d 686 (2007). Simply put, a dispute of material fact must be "genuine." Fed. R. Civ. Pro. 56(a). This requires that the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,'" because "'[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott*, 550 U.S. at 380 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L. Ed. 2d 538 (1986)). The *Scott* Court explained that testimony which is contradicted by video evidence does not create a "genuine" issue of material fact, 550 U.S. at 379, 380-81.

The same is true here. Ms. Grant's interaction with restaurant staff at Ouzo Bay was recorded on video. The video shows that she was told D.G.'s mesh basketball shorts and Air Jordon t-shirt violated the restaurant's dress code. The alleged comparator, also shown on the video, was wearing khaki-style shorts and a shirt with a design, not mesh basketball shorts and an Air Jordon t-shirt. (Ex. 6). "When documentary evidence blatantly contradicts a plaintiff's account so that no reasonable jury could believe it, a court should not credit the plaintiff's version on summary judgment." *Witt v. W. Va. State Police*, 633 F.3d 272, 276-277 (4th Cir. 2011) (internal quotations and citations omitted). Here, the video evidence establishes that the clothing on the child on the patio of Ouzo Bay was significantly different from D.G.'s; therefore he cannot be a comparator to support Plaintiffs' allegations of discrimination.

### D.    Plaintiffs have suffered no harm

To recover on their claim for a violation of 42 U.S.C. § 1981, Plaintiffs must prove they suffered some damage. Compensatory damages for a § 1981 claim may include emotional distress

13

and humiliation, as well as out-of-pocket costs. *See, e.g., Gunby v. Pennsylvania Elec. Co.*, 840

F.2d 1108, 1121-22 (3d Cir.1988) ("General compensatory damages are available under §1981,

and such damages may include compensation for emotional pain and suffering."). Plaintiffs "must

present evidence of actual injury, however, before recovering compensatory damages for mental

distress." *Id.*

 Liability aside, Plaintiffs cannot prevail on their claim because they have not suffered any

harm. Ms. Grant testified that all of her damages flowed from D.G.:

> Q: All right. Can you, can you explain to me what damages you've sustained
>   as a result of the occurrence?
>
> A: Just struggling with him and his emotions and his anger. And he has, he has
>   tutors and just him battling back and forth with his tutors. Like it has gotten
>   so bad with his anger and his irritability and his not following directions
>   that I literally have started looking at -- had started looking at military
>   school. And it was bad because I know it's not his fault, but I'm struggling.
>   I'm struggling with him so –
>
> Q: How about personally, apart from your son?
>
> A: That's personal.
>
> Q: Uh-huh. Do you have any damages that you claim that have nothing to do
>   with your son?
>
> A: All of my damages are related to my son and my worry about him.

(Ex. 1, at 212-213). Thus, Plaintiff has not suffered any harm.

 D.G., at the direction of counsel, refused to testify whether he believed he suffered any

racial discrimination. (". . .  Do you believe the incident that we're talking about was racially

motivated?. . . . . I'm going to direct him not to answer that question.")(Ex. 3, at 62-71). There is

no testimony or evidence that D.G. in any way suffered any harm arising from a belief that he was

the subject of racial discrimination.

Further, Plaintiffs have no expert witness to opine on any issue in this case, including

damages. As recently discussed by Judge Grimm:

> Under Maryland law, damages for emotional distress are recoverable 'provided that
> it is proximately caused by the wrongful act of the defendant and it results in a
> physical injury or is capable of objective determination.' *Beynon v. Montgomery
> Cablevision Ltd. Pt'ship*, 351 Md. 460, 718 A2d 1161, 1183 (Md. 1998). If
> determining the cause of a plaintiff's emotional distress is a 'complex medical
> question,' Maryland courts require expert testimony to guide the jury on that issue.
> *Wilhelm v. State Traffic Safety Commission*, 230 Md. 91, 185 A.2d 715, 719 (1962).
> 'Whether a case involves a "complicated medical question" is a fact-intensive
> inquiry.' *Wiseman v. Walmart Stores, Inc., No.* 1:16-CV-04030-SAG, 2017 U.S.
> Dist. LEXIS 103471, 2017 WL 2865013, at *4 (D. Md. July 5, 2017).
>
> Maryland's seminal case on this issue is *Wilhelm v. State Traffic Safety Comm'n*,
> 185 A.2d at 715. In *Wilhelm*, the Maryland Court of Appeals found:
>
> > There can be little doubt, we think, that a question involving the
> > causes of emotional disturbances in a person sufficient to evoke,
> > subconsciously, grossly exaggerated symptoms is an intricate and
> > complex one, peculiarly appropriate for science to answer. To allow
> > a jury of laymen, unskilled in medical science, to attempt to answer
> > such a question would permit the rankest kind of guesswork,
> > speculation and conjecture.
>
> *Id.* at 719.
>
> Subsequent decisions from the Maryland Courts of Appeal have restated,
> categorically, that 'the causes of emotional disturbances are complicated medical
> questions, proof of which must be made by expert medical testimony.' *State v.
> Allewalt*, 308 Md. 89, 517 A.2d 741, 747 (Md. 1986) (quoting *Johnson v. Zerivitz*,
> 234 Md. 113, 198 A.2d 254, 255 (Md. 1964)); *S.B. Thomas, Inc. v. Thompson*, 114
> Md. App. 357, 689 A.2d 1301, 1311 (Md. Ct. App. 1997).

*Ross v. Chopra*, 2021 U.S. Dist. LEXIS 248013, *26-28 (D.Md. Dec. 30, 2021). Here, Plaintiffs

not only lack expert testimony to support any claim of emotional distress, but D.G., through

counsel, refused to provide any lay testimony that he believed he was subjected to racial

discrimination. Judge Grimm further discussed that other potential causes for emotional upset need

to be explained and excluded before the issue of emotional distress can be addressed before a jury:

Additionally, Dr. Chopra argues quite plausibly that the existence of multiple other possible sources of Ms. Ross's alleged emotional distress complicates the picture such that it would require an expert opinion to parse whether Ms. Ross's distress was caused by Dr. Chopra's alleged wrongdoing, or other turmoil is Ms. Ross's life that was occurring contemporaneously. Chopra MSJ at 9-12.

The Maryland Court of Special Appeals has noted that 'an otherwise simple issue of causation may become a complicated medical matter if under the facts of the case there is a possibility that the symptoms predated the emotional shock or arose from an independent source.' *Hunt v. Mercy Med. Ctr.*, 121 Md. App. 516, 710 A.2d 362, 375 (Md. Ct. App. 1998). It has also stated that it 'is clear that evidence, including expert medical testimony, establishing the possibility of an alternative theory of causation may be the decisive factor that transforms a non-medically complicated question of causation, requiring no expert medical testimony, into a complicated medical question, requiring such testimony as a matter of law. Evidence of such an alternative theory of causation would be capable of performing this transforming function regardless of which party introduces it and regardless of the stage of the trial at which it is introduced.' *Am. Airlines Corp. v. Stokes*, 120 Md. App. 350, 707 A.2d 412, 418-19 (Md. Ct. App. 1998).

*Id.* Here, D.G. had many other things going on in his life which could account for emotional distress or upset. His father was estranged. (Ex. 1, at 8-9, 13, 111-130). He witnessed his mother get into a physical altercation with his father's girlfriend, resulting in both Ms. Grant and D.G.'s father seeking to have the other charged. (*Id.*). Ms. Grant explained that it was her contention that D.G.'s father was trying to "take" D.G. (*Id.*). Moreover, Ms. Grant and D.G.'s father have been involved in protracted custody and child support litigation with one another for years. (*Id.*). Absent expert testimony, Plaintiffs cannot establish that D.G. suffered any harm from not being seated at Ouzo Bay.

### E.    Plaintiffs are not entitled to punitive damages

In their ad damnum clause to Count I of their Amended Complaint, Plaintiffs seek both compensatory and punitive damages. However, Plaintiffs cannot recover punitive damages here because they have no compensatory damages. *People Helpers Found. v. City of Richmond*, 12 F.3d 1321, 1327 (4th Cir. 1993) ("In the absence of a specific statutory directive on this issue, federal courts have chosen to apply the majority rule that punitive damages are not recoverable when

compensatory damages have not been awarded."). Punitive damages are also only available in a Section 1981 claim where the plaintiff demonstrates that the defendant's conduct was prompted by "malice or with reckless indifference to the federally protected rights" of a plaintiff. *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 119 S.Ct. 2118, 144 L. Ed. 2d 494 (1999); *Thomas v. Freeway Foods, Inc.*, 406 F. Supp. 2d 610, 624-625 (W.D.N.C. 2005) (*citing Wilkins v. DenAmerica Corp.*, 2000 U.S. Dist. LEXIS 21308 (W.D.N.C. April 6, 2000)). Further, a restaurant "may not be held liable for a server's misconduct unless the plaintiff produces evidence that the management ratified or approved of the discriminatory acts of the server." *Thomas, supra.* Specifically, Plaintiffs must show "(1) the defendant authorized or ratified the doing and manner of the act; (2) the defendant was reckless in employing the agent who committed the act; or (3) the agent who committed the act was employed in a managerial capacity in the scope of her employment." *Id.; see also Wilkins, supra.*

Here, Atlas maintained a dress code which its employees enforced. There is no evidence that Atlas acted with malice and authorized its staff to employ the dress code in a racially discriminatory manner or that Atlas was reckless in employing agents who enforced the dress code in such manner. Therefore, Plaintiffs are not entitled to punitive damages.

## IV.   CONCLUSION

For the foregoing reasons, Defendant, Atlas, LLC, requests that this Court enter summary judgment in its favor on all counts and grant such other and further relief as this Court deems just, equitable and proper.

Respectfully submitted,

DeCARO, DORAN, SICILIANO,
GALLAGHER & DeBLASIS, LLP

17

/s/ James S. Liskow
James S. Liskow
17251 Melford Boulevard
Suite 200
Bowie, MD 20715
Tel:    (301) 352-4950
Fax:    (301) 352-8691
jliskow@decarodoran.com

THOMAS & LIBOWITZ, P.A.


/s/ Scott H. Marder
Scott H. Marder (Fed. Bar No. 28789)
shmarder@tandllaw.com
Sima G. Fried (Fed. Bar No. 03564)
sfried@tandllaw.com
25 S. Charles Street
Suite 2015
Baltimore, MD  21201
Tel:    (410) 752-2468
Fax:    (410) 752-0979


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 3rd day May, 2022, a copy of the foregoing Memorandum

of Points & Authorities in Support of Motion for Summary Judgment was efiled to:

Joseph E. Spicer, Esquire
COHEN HARRIS, LLC
1 North Charles Street
Suite 350
Baltimore, MD  21201

Lennon Edwards, Esquire
Donte Mills, Esquire
MILLS & EDWARDS, LLP
14 Penn Plaza, Suite 2020
New York, New York 10122

18

/s/ Scott H. Marder
Scott H. Marder