IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARCIA GRANT et. al,                    *

     Plaintiffs,                       *

v.                                      *          Civil Action No. GLR-20-2226

ATLAS RESTAURANT GROUP LLC,             *

     Defendant.                        *

***

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Atlas Restaurant Group's ("Atlas Group") Motion for Summary Judgment (ECF No. 67). The Motion is ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2023). For the reasons outlined below, the Court will grant the Motion.

## I.     BACKGROUND

### A.     <u>Factual Background</u>[1]

Atlas Group owns, operates, maintains, and manages several restaurants, including Ouzo Bay restaurant ("Ouzo Bay") in Baltimore, Maryland. (Rafael Coppola Decl. ["Coppolla Decl."] at 1:4, ECF No. 88-4). On June 21, 2020, Plaintiffs Marcia Grant ("Grant"), her nine-year-old son ("D.G."), (collectively, "Plaintiffs"), and a friend named Marcia Hines ("Hines") entered Ouzo Bay. (Marcia Grant Dep. ["Grant Dep."] at 28:20–29:18, ECF No. 67-3; Marcia Hines Dep. ["Hines Dep."] at 3:3–7, 4:12–5:11, ECF No. 67-

---

[1] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

4; D.G. Dep. at 3:1–6, 4:9–11, ECF No. 67-5). Ouzo Bay maintains a dress code, which was posted on a sign at the front of the restaurant on the day of Plaintiffs' visit, (Def.'s Resp. to Pl.'s Interrog. No. 12 at 3, ECF No. 67-6), that prohibits "active wear," "gym clothing," and "gym shorts," among other apparel, (House Rules at 2, ECF No. 67-7). After entering the restaurant, restaurant staff, including an assistant general manager working at the host stand and later a manager, (Grant Dep. at 36:2–37:17, Donald McCafferty Aff. ["McCafferty Aff."] at 2–3, ECF No. 67-8; Video at 1:45–2:05, ECF No. 82), informed Plaintiffs that they could not eat at Ouzo Bay because D.G.'s clothing violated the dress code, (Grant Dep. at 35:17–19, Video at 2:28–2:33). The manager allowed Plaintiffs the option of changing D.G.'s shorts and returning to dine at the restaurant. (Video Transcript at 2:24–3:2, 4:3–6, ECF No. 82).[2] Grant observed that a white child of approximately the same age as D.G. was dining at the restaurant. (Grant Dep. at 40:7–15, 44:15–17). The white child appeared to be wearing an outfit similar to that of D.G., as both were dressed in shorts, graphic t-shirts, and tennis shoes. (Id. at 40:13–15; Video at 2:34–2:39). Grant asked an Ouzo Bay manager why the white child was permitted to dine at the restaurant while D.G. was not. (Video at 2:32–37). The manager responded that D.G. was wearing gym shorts while the white child was not. (Id. at 2:40–3:15). Grant created a video of a portion of her interaction with Ouzo Bay's staff. (See generally id.).

---

[2] The Video and the Video Transcript are each contained on the same CD, which is marked as ECF No. 82.

**B.**    <u>**Procedural History**</u>[3]

On July 6, 2020, Plaintiffs filed suit in the Circuit Court for Baltimore City, Maryland. (ECF No. 2). Atlas Group removed the action to this Court on July 31, 2020 on the basis of federal question and supplemental jurisdiction. (Notice of Removal at 1–2, ECF No. 1). Atlas Group moved for dismissal of the Complaint on October 19, 2020. (ECF No. 21).[4]

Plaintiffs filed an Amended Complaint on November 2, 2020 alleging violation of 42 U.S.C. § 1981 <u>et seq.</u> (Count One); intentional infliction of emotional distress (Count Two); respondeat superior (Count Three); and violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a <u>et seq.</u> (Count Four). (Am. Compl. ¶¶ 30–63, ECF No. 23). Plaintiffs seek compensatory damages and punitive damages. (<u>Id.</u> ¶¶ 38, 46, 51, 63). On November 16, 2020, Atlas Group filed a Motion to Dismiss Plaintiffs' Amended Complaint or Alternatively for Stay. (ECF No. 26). Plaintiffs filed an Opposition on December 7, 2020. (ECF No. 33). On December 21, 2020, Atlas Group filed a Reply. (ECF No. 34). On July 7, 2021, the Court issued a Memorandum Opinion and Order granting the Motion to Dismiss in part and denying it in part. (ECF Nos. 36, 37). Specifically, the Court dismissed

---

[3] This case has an extensive procedural history and thus only the relevant procedural facts are laid out herein.

[4] This Motion was rendered moot on November 2, 2020 when Plaintiffs filed their Amended Complaint. <u>See</u> <u>Venable v. Pritzker</u>, No. GLR-13-1867, 2014 WL 2452705, at *5 (D.Md. May 30, 2014) ("When a plaintiff files an amended complaint, it generally moots any pending motions to dismiss because the original complaint is superseded."), <u>aff'd,</u> 610 F.App'x 341 (4th Cir. 2015).

Counts Two, Three, and Four of the Amended Complaint, but denied the Motion as to Count One, violation of 42 U.S.C. § 1981. (Mem. Op. at 4–12, ECF No. 36).

Atlas Group moved for Summary Judgment as to the remaining count on May 3, 2022. (ECF No. 67). Plaintiffs filed an Opposition on February 27, 2023, (ECF No. 88), and Atlas Group filed a Reply on March 31, 2023, (ECF No. 96).

## II.    DISCUSSION

### A.    <u>Standard of Review</u>

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material

fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Id. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (quoting Anderson, 477 U.S. at 247).

**B.    Analysis**

Plaintiffs allege that Atlas Group violated 42 U.S.C. § 1981 by refusing to serve them at the Ouzo Bay restaurant on the basis of their race. (Am. Compl. ¶¶ 30–38). 42 U.S.C. § 1981(a) provides: "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens. . . ." 42 U.S.C. § 1981 protects against

5

racial discrimination in the making and enforcement of private contracts, including "the contractual relationship that arises between proprietor and customer in a restaurant setting." Gennell v. Denny's Corp., 378 F.Supp. 2d 551, 557 (D.Md. 2005). To survive a summary judgment motion, a plaintiff must allege sufficient facts to show that "racial prejudice was a necessary condition of a contractual impairment." White v. ACell, Inc., No. GLR-20-173, 2021 WL 3911999, at *7 (D.Md. Sept. 1, 2021) (internal citations omitted). In other words, the plaintiff must "prove that, but for race, [he] would not have suffered the loss of a legally protected right." Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S.Ct. 1009, 1019 (2020).

Racial discrimination can be shown by "direct evidence of discrimination, or differential treatment of similarly situated" non-minority individuals. McNeil v. Loyola Univ., No. WDQ-13-1473, 2014 WL 320494, at *9 (D.Md. Jan. 27, 2014). If a plaintiff does not present direct evidence of discrimination, she must proffer sufficient circumstantial evidence to satisfy the McDonnell Douglas analytical framework. See Murrell v. The Ocean Mecca Motel, Inc., 262 F.3d 253, 257 (4th Cir. 2001). Under this framework, the plaintiff must first establish a prima facie case of discrimination. Hawkins v. PepsiCo, Inc., 203 F.3d 274, 278 (4th Cir. 2000). Subsequently, the defendant may respond by producing evidence that it acted with a legitimate, nondiscriminatory reason. Id. Finally, the plaintiff may present evidence showing that the defendant's proffered reason was mere pretext and that race was the real reason for the defendant's less favorable treatment of the plaintiff. Id.

To establish a prima facie case of discrimination in a § 1981 action relating to the purchase of goods or services, the plaintiff must show: (1) she is a member of a protected class; (2) she "sought to enter into a contractual relationship with the defendant;" (3) she "met the defendant's ordinary requirements to pay for and receive goods or services ordinarily provided by the defendant to other similarly situated customers;" and (4) she "was denied the opportunity to contract for goods or services" that were otherwise afforded to customers that were not members of a protected class. Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004). If a plaintiff has presented "direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision," she is under no obligation to make out a prima facie case. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 318 & n.4 (4th Cir. 2005).

### 1.    Direct Evidence

Atlas Group argues that the evidence Plaintiffs presented is direct evidence, and, accordingly, the McDonnel Douglas burden shifting framework does not apply. (Reply Resp. Mot. Summ. J. ["Reply"] at 2, ECF No. 96). Direct evidence is "evidence which, if believed, would prove the existence of a fact . . . without inference or presumption." O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548 (4th Cir. 1995), rev'd on other grounds by O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996) (quoting Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 958 (5th Cir. 1993)). Direct evidence includes "statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested . . . decision." Warch v. Ohio Cas. Ins. Co., 435 F.3d

510, 520 (4th Cir. 2006) (quoting <u>Taylor v. Va. Union Univ.</u>, 193 F.3d 219, 232 (4th Cir. 1999)).

By Atlas Group's own admission, "Plaintiffs have not presented direct evidence of racial animus." (Mem. Supp. Mot. Summ. J. ["Mot."] at 10, ECF No. 67-1). Neither the video recorded by Marcia Grant nor the press release issued by Atlas are direct evidence of discrimination. Neither the video nor the press release are discriminatory on their face, <u>see</u> <u>Trans World Airlines, Inc. v. Thurston</u>, 469 U.S. 111, 121 (1985) (finding direct evidence of discrimination where company policy was discriminatory on its face), nor do Plaintiffs contend they are. Nowhere in the video does the Ouzo Bay manager explicitly say that Grant and D.G. are being denied service because of their race or make any racially charged comments. <u>See</u> <u>Lizardo v. Denny's, Inc.</u>, 270 F.3d 94, 104 (2d Cir. 2001). Rather, Plaintiffs' argument is that the video provides circumstantial evidence from which discrimination can be inferred, which the press release allegedly corroborates. (Opp'n at 6–7). Accordingly, the case involves only indirect or circumstantial evidence, and the <u>McDonnell Douglas</u> burden shifting framework is applicable. <u>See</u> <u>Trans World</u>, 469 U.S. at 121 ("The shifting burdens of proof set forth in <u>McDonnell Douglas</u> are designed to assure that the 'plaintiff [has] his day in court despite the unavailability of direct evidence.'") (quoting <u>Loeb v. Textron, Inc.</u>, 600 F.2d 1003, 1014 (1st Cir. 1979)).

### 2.    <u>McDonnell Douglas</u> Burden Shifting Framework

#### i.    <u>Prima Facie Case</u>

Under <u>McDonnell Douglas</u>, in order to survive a Motion for Summary Judgment, plaintiffs must establish a prima facie case of discrimination. <u>McDonnell Douglas Corp. v.</u>

Green, 411 U.S. 792, 802 (1973). Applying the factors for establishing a prima facie case of §1981 racial discrimination relating to the purchases of goods and services, a plaintiff must show that (1) she is a member of a protected class; (2) she "sought to enter into a contractual relationship with the defendant;" (3) she "met the defendant's ordinary requirements to pay for and to receive goods or services ordinarily provided by the defendant to other similarly situated customers;" and (4) she "was denied the opportunity to contract for goods or services that was otherwise afforded to white customers." Williams, 372 F.3d at 667; see also Callwood v. Dave & Buster's, Inc., 98 F.Supp.2d 694, 707 (D.Md. 2000) (applying materially identical factors in the restaurant setting). Where "a plaintiff's allegations, [], are based 'completely upon a comparison to [a member of a ] non-protected class . . . the validity of [the plaintiff's] prima facie case depends upon whether that comparator is indeed similarly situated.'" Thomas v. City of Annapolis, 851 F.App'x. 341, 347 (4th Cir. 2021) (citing Haywood v. Locke, 387 F.App'x 355, 359 (4th Cir. 2010)). At bottom, the Court finds that Plaintiffs cannot establish a prima facie case of § 1981 racial discrimination.[5]

Here, the first two factors are easily met. Grant and D.G. are African American and, as such, are members of a protected class. See Williams, 372 F.3d at 668. Grant and D.G. made themselves available to receive and pay for services at Atlas Group's Ouzo Bay restaurant. (Grant Dep. at 36:2-6; Hines Dep. at 5:1–8, 10:8–16).

---

[5] Atlas Group also argues that they are entitled to summary judgment because Plaintiffs have not put forward sufficient evidence to prove damages. (Reply at 11–12). Because the Court finds that Atlas Group is entitled to summary judgment on Plaintiffs' substantive claims, this additional argument need not be considered.

The parties dispute whether Plaintiffs met Atlas Group's ordinary requirements to pay for and receive goods or services ordinarily provided by the defendant to other similarly situated customers. (Mot. at 10–11; Opp'n at 8–10). Ouzo Bay's posted dress code prohibits "active wear," "gym clothing," and "gym shorts." (House Rules at 2). Atlas Group argues that D.G. was wearing "mesh basketball shorts and [an] Air Jordan t-shirt," which violated Ouzo Bay's dress code. (Mot. at 15). D.G.; Marcia Hines, Marcia Grant's friend who accompanied Plaintiffs to Ouzo Bay restaurant; and Donald McCafferty, the assistant general manager at Ouzo Bay working on the day of the incident, all testified that D.G. was wearing basketball shorts. (D.G. Dep. at 5:10–18; Hines Dep. at 5:18–6:2, McCafferty Aff. ¶ 4). Plaintiffs take issue with Atlas Group's characterization of the shorts as "mesh" but provide no evidence that the shorts were not basketball shorts. (See Resp. Opp'n Mot. Summ. J. ["Opp'n"] at 6, ECF No. 88).

Accordingly, the Court finds that there is no genuine dispute as to whether Plaintiffs violated Ouzo Bay's dress code. Grant acknowledged seeing the posted dress code as she was exiting the restaurant. (Grant Dep. at 32:1–19, 39:11–17). The record clearly establishes that D.G. was wearing basketball shorts, which are by definition "active wear" or "gym clothing," as they are made to play a sport in a gym, and are thus prohibited by Ouzo Bay's dress code. Plaintiffs argue that the dress code is vague and that Atlas Group's press release about the incident which stated that the denial of service "should never have happened" implies that D.G. met the restaurant's dress code requirements. (Opp'n at 6–7, 9). The Court finds that the dress code is not vague, and that Atlas Group's press release issued in response to the incident is inadmissible to prove liability as a subsequent remedial

measure, see Fed.R.Evid. 407, and, even if it were admissible, does not suggest that at the time of the incident Plaintiffs met the restaurant's ordinary requirements but rather serves as a general apology for the customer service Plaintiffs were provided. Thus, Plaintiffs did not meet Atlas Group's posted requirements to pay for and receive goods or services. Meeting the ordinary requirements of the business is only half of the third factor, which also demands that these ordinary requirements be applied to "other similarly situated customers." Williams, 372 F.3d at 667.

Both the third and fourth factor require that to make out a prima facia case of discrimination the plaintiff be treated differently than other similarly situated customers. Williams, 372 F.3d at 667. When a plaintiff intends to rely on comparator evidence to show differential treatment, "[p]laintiffs must identify [a] proposed comparator and 'establish a plausible basis for believing [the comparator was] actually similarly situated.'" Asi v. Info. Mgmt. Grp., Inc., No. GLR-18-3161, 2019 WL 4392537, at *6 (D.Md. Sept. 13, 2019) (quoting Coleman v. Md. Ct. App., 626 F.3d 187, 191 (4th Cir. 2010)). "To be 'similarly situated,' the individuals with whom [Plaintiffs] attempt to compare [themselves] must be similarly situated in all material respects." Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997) (employment-discrimination context); see also Tinsley v. City of Charlotte, 854 F.App'x 495, 500 (4th Cir. 2021) (same); Lizardo v. Denny's, Inc., No. 97-1234 FJS GKD, 2000 WL 976808, at *4 (N.D.N.Y. July 13, 2000), aff'd, 270 F.3d 94 (2d Cir. 2001) (applying Shumway rule to § 1981 claim in a restaurant setting). Although the issue of whether two individuals are similarly situated is typically a question of fact for the jury, "this does not preclude a court from deciding as a matter of law that there is an

insufficient basis for comparison to submit the question to the fact-finder." Tinsley, 854 F.App'x at 501.

Atlas Group argues that D.G. and the white child are not similarly situated because the record clearly establishes that the white child was wearing khaki-style shorts that met the dress code while D.G. was not. (Mot. at 11). The white child's mother, Erin Ross, provided a photo of the shorts, which the tag indicates are 99% cotton and are J. Crew Style No. L1655, on J. Crew Factory's website called "Boys' Gramercy Flex chino short." (Erin Ross       Aff.       at       3–4,       ECF       No.       83-2; https://factory.jcrew.com/p/boys/categories/clothing/pants/shorts/boys-gramercy-flex-chino-short/L1655). Ross also stated that the white child was wearing blue shorts from J. Crew with belt loops, a fly, a zipper, and a button. (Erin Ross Aff. ¶ 9; ECF No. 83-1). McCafferty stated that the white child was wearing khaki-style shorts. (McCafferty Aff. ¶ 10). Hines described the white child's shorts as "Bermuda-style shorts" made of a "cotton material" and said they "weren't workout shorts." (Hines Dep. at 7:7–16, 8:14–20; Suppl. Hines Dep. Excerpts at 4:18–19, ECF No. 96-1). Atlas Group also argues that there is no evidence in the record to suggest that Plaintiffs and the white family dealt with the same host upon entering the restaurant and, without such evidence, Plaintiffs cannot establish that D.G. and the white child were similarly situated. (Reply at 5–6).

Plaintiffs argue that D.G. and the white child, even if not dressed identically, were similarly situated, because they were wearing graphic t-shirts, shorts, and tennis shoes, encountered Ouzo Bay staff generally, and were subject to the same dress code. (Opp'n at 13). Plaintiffs also argue that Atlas Group admitted that D.G. and the white child were

"similarly dressed" in their press release following the incident. (Id. at 14). Plaintiffs do not offer any evidence that D.G. was not wearing basketball shorts, nor do they provide evidence that D.G. and the white child encountered the same acting host or manager who denied service to Plaintiffs. [6]

While D.G. and the white child may have been wearing similar overall outfits, the court finds that because Ouzo Bay's dress code prohibits athletic or gym clothing and "gym shorts" specifically, the distinction between D.G.'s shorts and the white child's shorts is essential to this case. (See House Rules at 2). The record is conclusive that D.G.'s shorts were basketball shorts and did not meet the plain requirements of the posted dress code, while the white child's shorts were khaki or chino Bermuda shorts that did meet the dress code requirements. Because the difference in the shorts resulted in the comparator meeting the ordinary requirements for service at Ouzo Bay while the Plaintiffs did not, the comparator is not "similarly situated in all material respects," Shumway, 118 F.3d at 64, and the white child is not a valid comparator for Plaintiffs' § 1981 discrimination claim.

Additionally, there is no evidence in the record to establish that D.G. and the white child or their respective families encountered the same staff at Ouzo Bay. To determine whether comparators were "similarly-situated, the Court must examine the circumstances surrounding the arrival and seating of each group as presented by the record." Lizardo, 2000 WL 976808, at *4, see also Callwood, 98 F.Supp.2d at 712 (finding that comparators

---

[6] Plaintiffs claim that "Defendant's manager encountered both Plaintiff D.G. and the comparator," (Opp'n at 13), but the evidence they cite to in the record does not establish this point, and the Court has found no other record evidence to support this point.

were similar in "most all relevant respects" in part because they were served by the same waitperson); Haywood, 387 Fed.App'x at 359 (finding that in the employment discrimination context, a showing that comparators were similarly situated would include evidence that the employees "dealt with the same supervisor") (internal quotation omitted). Without evidence that D.G. and the white child were subject to the same circumstances and staff on their arrival and seating, the relevant time periods at issue, Plaintiffs cannot establish that D.G. and the white child were similarly situated in all material respects.

Plaintiffs did not meet the ordinary requirements to pay for and to receive goods or services ordinarily provided by Atlas Group, and, as a matter of law, D.G. and the white child were not similarly situated in all material respects. Plaintiffs have provided no other evidence that they were denied the opportunity to contract for goods or services that were otherwise afforded to white customers. Thus, Plaintiffs cannot make out a prima facie case of § 1981 racial discrimination, and Atlas Group is entitled to summary judgment as a matter of law. See Celotex, 477 U.S. at 323 (summary judgment should be granted where the nonmoving party has failed to make a sufficient showing on an essential element of their case to which they bear the burden of proof).

## ii. **Burden Shift**

Even if Plaintiffs did make out a prima facie case of racial discrimination, Plaintiffs cannot succeed under the McDonnell Douglas framework. Under McDonnell Douglas, once a prima facie case of discrimination has been made, the burden then shifts to the defendant to show a legitimate, non-discriminatory reason for the adverse treatment. 411 U.S. at 802–03. Atlas Group argues that Plaintiffs were denied service because they

violated Ouzo Bay's dress code. (Mot. at 10–11). There is no dispute that Atlas' dress code prohibited "athletic wear," "gym clothes," and "gym shorts." (House Rules at 2). Grant acknowledges seeing the dress code posted as she was leaving the restaurant. (Grant Dep. at 32:1–19, 39:8–17). Atlas Group has thus satisfied their burden of providing a legitimate, nondiscriminatory reason.

### iii.   Pretext

The burden then shifts back to Plaintiffs to show that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 253 (1981); McDonnell Douglas, 411 U.S. at 802–03. The Court must consider the "entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)).

The record contains evidence that corroborates Atlas Group's explanation. Plaintiff's own video shows Ouzo Bay's manager asking Grant whether she lived close enough to bring D.G. home to change so that they could return to dine at the restaurant. (Video Transcript at 4:3–6; Video at 3:39–43). Additionally, the record establishes that around 30% of the restaurant patrons were Black. (Marcia Grant Decl. ¶ 5, ECF No. 88-10).

Plaintiffs attempt to show that Atlas Group's asserted justification is false through comparator evidence. (Opp'n at 6–8). As established above, the white child and D.G. were

not similarly situated in several material respects, and accordingly this comparator evidence does not establish that Atlas Group's justification was a pretext for discrimination. Plaintiffs also argue that Atlas Group's statement following the incident, termination of the employees involved in the incident, and later revision of the dress code show that their explanation is pretext. (Opp'n at 17–18). "Courts in the Fourth Circuit may not consider inadmissible evidence on a motion for summary judgment." Giles v. Nat'l R.R. Passenger Corp., 59 F.4th 696, 704 (4th Cir. 2023). All of these actions are subsequent remedial measures and are inadmissible to prove culpable conduct. Fed.R.Evid. 407; see also Specialty Prod. Int'l, Ltd. v. Con-Way Transp. Servs., Inc., 410 F.Supp.2d 423, 428 (M.D.N.C. 2006) (refusing to consider inadmissible evidence of subsequent measures on motion for summary judgment); Wehling v. Sandoz Pharmaceuticals Corp., 162 F.3d 1158 (4th Cir. 1998) (unpublished table decision) (press release submitted as an exhibit by plaintiff to oppose defendant's motion for summary judgment inadmissible because it contained evidence of subsequent remedial measures).

Plaintiffs also argue that discrimination can be inferred in this instance because Atlas Group has engaged in a pattern of discrimination. (Opp'n at 14–17). The Court may "infer discriminatory intent from evidence of a general pattern of racial discrimination in the practices of a defendant." Woods v. City of Greensboro, 855 F.3d 639, 649 (4th Cir. 2017). "Pattern-or-practice disparate treatment claims focus on allegations of widespread acts of intentional discrimination," and require the plaintiff to "demonstrate that intentional discrimination was the defendant's standard operating procedure." Reynolds v. Barrett, 685 F.3d 193, 203 (2d Cir. 2012) (internal quotation marks and brackets omitted).

Plaintiffs cite affidavits from former employees stating that they witnessed black customers receive less favorable treatment than white customers at Atlas Group's restaurants and that they witnessed Atlas Group's dress code being enforced against black customers in a racially discriminatory manner. (Opp'n at 14–17). Lay witness opinions are inadmissible and, therefore, insufficient to overcome a motion for summary judgment. Hamstead v. Walker, No. 20-1650, 2022 WL 5133569, at *6 (4th Cir. Oct. 5, 2022) (citing United States v. Perkins, 470 F.3d 150, 156 (4th Cir. 2006) ("[S]peculative opinion testimony by lay witnesses—i.e., testimony not based upon the witness's perception—is generally considered inadmissible.")).

The declarations from Jenna Burlakoti, (Jenna Burlakoti Decl. ["Burlakoti Decl."] at 1–3, ECF No. 88-3), and Elizabeth Devine, (Elizabeth Devine Decl. ["Devine Decl."] at 1–2, ECF No. 88-5), former employees at Atlas Group restaurants other than Ouzo Bay, offer conclusory, lay witness opinions unsupported by facts about different locations, times, and circumstances that are not probative in regard to the factual situation at issue. Burlakoti describes an incident where her friend arrived at Loch Bar, a different Atlas Group property, dressed in "leggings and a button down shirt over a tank top," who she concludes was denied service for "no reason other than [her] race" without offering any direct or circumstantial evidence of discrimination. (Burlakoti Decl. at 2). Elizabeth Devine states without any factual support that at Azumi, a different Atlas Group property, she "noticed that the restaurant had a higher alert of what people of color were wearing . . . than white people." (Devine Decl. ¶ 15). The only facts Devine provides describe an incident where a black and white customer were actually treated similarly because a manager

17

expressed that he would ask both customers to remove their hats. (Id. ¶ 10). Federal Rule of Evidence 701 provides that a lay witness can give an opinion if it is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness testimony or the determination of a fact in issue." Certain Underwriters at Lloyd's, London v. Sinkovich, 232 F.3d 200, 203 (4th Cir. 2000). Most of the statements in Burlakoti and Devine's affidavits are conclusory opinions not rationally based on their own perception. To the extent their statements are not lay witness opinions, they concern only events at different properties and time periods with different staff than the events at issue at Ouzo Bay. Accordingly, the evidence is not at all probative, and is "substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, [or by considerations of] undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403. The affidavits of Burlakoti and Devine, or large portions thereof, must be excluded under Federal Rule of Evidence 403 and 701.

The affidavit from Rafeal Coppolla, (Coppolla Decl. 1–2), and the email from Henry Walters, (Henry Walters Email ["Walters Email"] at 2–3, ECF No. 88-7), employees at Ouzo Bay during the time period of the incident at issue, also offer inadmissible hearsay evidence and lay witness opinions that Atlas Group's dress code is used in a racially discriminatory manner with no additional factual support and may similarly be excluded under Federal Rules of Evidence 403, 701, and 801. Coppolla's testimony describing his perception of the incident where Plaintiffs were denied service at Ouzo Bay is admissible, but his statement that "[o]n a different day" he complained about an employee avoiding serving a black couple, "was told on the spot that [he] was exaggerating," and

"learned . . . that [his] manager at Ouzo Bay was not welcoming of any information or observations concerning the important issue of racial bias" is based on inadmissible hearsay and offers conclusory opinions not supported by factual evidence. (Coppola Decl. ¶ 11). The email from Walters also contains a lay witness opinion that the dress code is "self-evidently used to justify treating black guests worse than white guests" with no factual support. (Walters Email at 2). A portion of Coppolla's affidavit, and Walter's email in its entirety, contain no probative facts and may be excluded under Federal Rule of Evidence 403.

Even if Burlakoti, Devine and Coppolla's affidavits and Walter's email were entirely admissible, they would still not give rise to an inference of a pattern or practice of discrimination. "General allegations of discrimination stretching back for years, not linked to the particular persons involved here, cannot carry [Plaintiff's] burden to show she was denied equal treatment on the basis of her race" on the date of her visit. Ali v. Hillstone Rest. Grp., No. CV2010547KMESK, 2022 WL 2128681, at *6 (D.N.J. June 14, 2022). The affidavits Plaintiffs provide concerning past Atlas Group discrimination, to the extent they may be admissible, provide anecdotal evidence of sporadic instances potentially giving rise to an inference of discrimination, but they do not prove a pattern or practice of discrimination, and they certainly do not demonstrate that intentional discrimination was Atlas Group's "standard operating procedure." Reynolds, 685 F.3d at 203.

To the extent the affidavits express a concern that the existence of a dress code in itself has a disparate impact on protected classes, (see e.g. Walters Email at 2–3), a disparate impact theory of discrimination is not actionable under § 1981, and Plaintiffs fail

to proffer any other evidence to support a pattern or practice of intentional discrimination. <u>Buchanan v. Consol. Stores Corp.</u>, 217 F.R.D. 178, 190 (D.Md. 2003) ("The critical element of a § 1981 claim is the showing of <u>intentional</u> discrimination, not merely that the defendant adopted a policy or practice that had a disparate impact upon minorities."); <u>see also</u> <u>Clark v. Creative Hairdressers, Inc.</u>, No. DKC 2005-0103, 2005 WL 3008511, at *5 (D.Md. Nov. 9, 2005). Accordingly, Plaintiffs cannot meet their burden to show that Atlas Group's purported justification is false or a pretext for discrimination.

Plaintiffs have failed to make out a prima facie case of discrimination and have not offered evidence sufficient to rebut Atlas Group's purported justification for denial of service. Based on the admissible evidence in the record, no reasonable jury could conclude that by a preponderance of the evidence, Atlas Group intentionally discriminated against Plaintiffs because of their race, and Plaintiffs have not demonstrated that any material facts in the record are disputed. Accordingly, Atlas Group is entitled to summary judgment as a matter of law.

## III.   CONCLUSION

For the foregoing reasons, the Court will grant Atlas Group's Motion for Summary Judgment (ECF No. 67). A separate Order follows.

Entered this 7th day of February, 2024.

_____
           /s/
George L. Russell, III
United States District Judge
